## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
## NORTHERN DIVISION
## COVINGTON

**CRIMINAL ACTION NO. 21-CR-09-DLB**

**UNITED STATES OF AMERICA**                                                  **PLAINTIFF,**

**V.**                          **DEFENDANT'S SENTENCING MEMORDUM**

**CHARLES H. CRAWFORD, JR.**                                          **DEFENDANT.**

* * * * *

Comes now, Charles Crawford ("Chuck"), by and through counsel, and requests the Court impose a sentence of probation.

When imposing a sentence, the Court must start with the properly calculated guidelines and weigh it with the factors set forth in 18 U.S.C. § 3553. In this matter, neither the United States nor the Defendant challenge the guideline determination reflected in the Presentence Report (PSR). The PSR recommends a guideline range of 0 to 6 months of imprisonment. The applicable guideline range is in Zone A, which does not mandate a term of imprisonment. This makes a sentence of probation available for the Court to impose.

The over-riding operative principle a court must follow when sentencing a defendant is found at 18 U.S.C. § 3553(a). The statute states, in part, "[t]he court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes of paragraph (2). . ." 18 U.S.C. § 3553(a). Those purposes are 1) the need to reflect the seriousness of the offense; 2) to afford adequate deterrence to criminal conduct; 3) to promote respect for the law; 4) to protect

the public from further crimes of the defendant; and 5) to provide the defendant with education, training, medical care, and other treatment in the most effective manner. 18 U.S.C. §3553(a)(2)(A)-(D). To impose a sentence that satisfies the requirements of the statute, the sentencing judge must consider several enumerated factors. 18 U.S.C. 3553. The following addresses some of the factors and their application to the Defendant's case.

The first and perhaps foremost factor under 18 U.S.C. § 3553 is "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). Chuck enlisted in the Army in August 1994 and completed boot camp and his initial training in construction equipment repair in December of that year. He remained in the Active Army Reserves until 1996. In the same year, Chuck completed the police academy and in 2002, he completed correctional officer training. From 1996 to 2006 and again from 2014 to 2015, Chuck worked in law enforcement as an officer and/or correctional officer for several police departments and jails. As stated in Chuck's mental health evaluation (Attachment A), being a police officer gave him an identity, commitment to a greater cause, a purpose, and respect in the community. Attachment A at 7. It "also fulfilled his desire to help others and be perceived as a person of compassion and authority." Attachment A at 8. The law enforcement persona minimized his feelings of low self-worth, self-doubt, and feelings of insecurity and inferiority. Ironically, Chuck's own behavior ended his law enforcement career and caused him to lose the only identity he loved.

According to Dr. Connor's report, after losing his law enforcement career and identity, Chuck reported being extremely distraught, depressed and dealing with a deep sense of loss. It makes sense that his life spiraled downward. By 2019, Chuck was divorced and had no contact with his family. He was working third shift as a maintenance worker and fighting bouts of

depression. So, when the opportunity to help a family whose daughter was struggling with drug addiction presented itself, Chuck "seized the opportunity to partially reinstate his law enforcement 'persona' as it once again provided him with a sense of purpose, dignity and importance." Attachment A at 8. Not only did he gain a sense of purpose, but the family accepted Chuck as one of their own. They communicated on the phone daily, went out to dinners and spent the holidays together. These circumstances gave Chuck the family and purpose he desperately needed.  To overcome this problem, Dr. Connor recommended that Chuck receive individual psychotherapy to understand where these desires come from and how to best deal with them. Chuck has started the recommended therapy by the provider recommended by Dr. Connor.

      The impact of Chuck's mental health issues is reflected in his motive. The crime of impersonating a federal agent is typically committed to obtain something of value or to impede legal troubles. Here, the crime was not motivated by greed or malice, and Chuck did not receive anything of value, other than a sense of self-worth and belonging. Chuck "was fueled by his character pathology driven by a desire to help others which gave him a sense of purpose and respect, which…filled an emotional deficit." Attachment A at 8. Because the typical motive does not apply in this case, the typical sentence of imprisonment should also not apply.

      As evidenced in the PSR, Chuck has done this before. The recidivism in this case is caused by the lack of treatment for his mental health issues. Court supervision with mental health treatment is the most likely means to prevent further recidivism rather than a term of incarceration. Therefore, the sentence to best achieve the purposes listed in 18 U.S.C. 3553(a)(2), is a term of probation with a requirement of mental health treatment.

      Lastly, Chuck has ongoing financial obligations he is determined to meet. He is employed as a maintenance worker at Cooper Standard since July 2021. His job permits him to

pay his monthly state probation mandated restitution, on which he is current and compliant. Additionally, Chuck makes monthly child support payments for his 13 year old daughter in the amount of $887. Importantly, Chuck is now married and contributes to the living expenses of his wife and step-children. A sentence of imprisonment would cause him to lose his job and the ability to meet his obligations.

Under 18 U.S.C. § 3553(a)(2)(D), the Court must consider a sentence to provide the defendant with, among other things, medical care. The overriding issue in this case is the Defendant's mental health issues. Those issues may only be resolved with mental health treatment. A term of incarceration is neither warranted by the Guidelines nor 18 U.S.C. § 3533(a). A sentence including a term of incarceration is not in accord with imposing a sentence not greater than necessary to achieve the purposes of 18 U.S.C. § 3553(a).

Wherefore, the Defendant respectfully submits that, based on the above, Chuck receive a term of probation with home incarceration and mental health treatment as conditions.

Respectfully submitted,

\s\ Robert K. McBride
Attorney for Charles Crawford
Taft Stettinius & Hollister, LLP
50 E. RiverCenter Blvd., Suite 850
Covington, Kentucky 41011
(859) 547-4308
rmcbride@taftlaw.com

## Certificate of Service

I hereby certify that on November 17, 2021, the above was filed via ECF and electronically served upon all counsels for the parties.

\s\ Robert K. McBride

4